UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| ROBERT JUSTICE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 2:15-CV-134 |
| v. | ) |
| | ) |
| RELIANCE STANDARD LIFE INSURANCE, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court pursuant to 28 U.S.C. § 636 and the standing orders of the District Court for a Report and Recommendation regarding Plaintiff's "Motion to Determine Standard of Review" [Doc. 12]. Defendant has filed a response [Doc. 13] to which Plaintiff has filed a Reply [Doc. 15]. Oral argument on the Motion was held on February 11, 2016. The matter is now ripe for resolution.

Plaintiff filed a Complaint against Defendant under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"). Plaintiff alleged that this Court has jurisdiction to "hear civil actions brought to recover benefits and clarify rights under the terms of employee welfare benefits plans; here, this consists of a long-term disability ("LTD") insurance policy … which was administered by [the Defendant]" [Doc. 1,*Complaint,* at ¶ 1].

By way of background, Plaintiff started working for Berkline on March 10, 2004 until he became disabled on May 15, 2008, at which time he began to receive long term disability benefits paid under the Plan. *Id.* at ¶ ¶ 14 and 15. In his complaint Plaintiff alleges that Defendant was the "plan administrator" as that term is defined by 29 U.S.C. §§ 1002(16) and

1

(21); that "the Plan constituted an 'employer welfare benefit plan' as defined by 29 U.S.C. § 1002(1)…[that] Plaintiff was covered … under the Plan and …qualifies as a 'participant' as defined by 29 U.S.C. § 1002(7)." *Id.* at ¶ 9.

Plaintiff continued to receive such benefits until May 22, 2014, when Defendant discontinued any more payments "based on contractual reasons." *Id.* at ¶ 16. Defendant ceased payments under the Plan when it realized it had mistakenly determined that Plaintiff was an "Eligible Person" to receive benefits when, in fact, he was not qualified to receive any LTD benefits. In its Answer, Defendant alleges that an "eligible person" under the Plan was defined as "active, full-time salaried employees" and did not include hourly workers such as Plaintiff. [Doc. 7, *Answer,* at ¶ 16]. There is no dispute that Plaintiff was an hourly worker when he was employed by Berkline. Upon learning of its mistake, Defendant ceased payments under the Plan.

Plaintiff alleges that he "paid multiple premiums to or for the benefit of [Defendant] out of his paycheck…." *Id.* at ¶ 17. He alleges he accepted the "the invitation of a Berkline representative to participate in the Plan" and that he detrimentally relied "on the actions and conduct of, and representations by, Defendants and Berkline regarding his expected LTD benefits." *Id.* at ¶ ¶ 17, 19. Plaintiff alleges that Defendant made the decision to "discontinue payment of long-term disability ["LTD"] benefits under an ERISA welfare benefit plan" [Doc. 12, at pg. 1].

Plaintiff filed the present Motion to determine the standard of review the Court should employ in reviewing the denial of benefits under the Plan. Plaintiff argues that the standard of review the Court should apply in this case is *de novo.* He argues that this is the "default" standard. Indeed, the standard to apply in reviewing the plan administrator's denial of benefits is *de novo*, unless the benefit plan gives the plan administrator discretionary authority to determine

2

eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). This *de novo* standard of review applies to the factual determinations as well as to the legal conclusions of the plan administrator. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998).

Plaintiff notes that the "arbitrary and capricious" standard would only apply where the Plan documents "clearly confer discretion or discretionary authority on the … administrator to determine eligibility for benefits…." [Doc. 12, pg. 3]. Plaintiff argues that Defendant cannot prove that the Plan actually confers such authority because Defendant cannot produce copy of a "legally-enforceable contract." *Id.* at 4. In an interesting twist, Plaintiff argues that "there appears to be no admissible contract (policy) document that would prove that [Defendant] was, in fact, given the requisite discretionary authority to determine eligibility for benefits under the ERISA plan at issue." *Id.* at 4. At oral argument, Plaintiff argued that he is not suggesting there is no contract, just that no contract can be produced.

In response, Defendant argues the point that if there is no "legally-enforceable" plan, then on what basis is Plaintiff contending Defendant owes him benefits? Defendant insists Plaintiff's argument does not help his cause at all. Aside from that, Defendant claims that it has produced the Plan in this case [Doc. 16-2, pg. 1-35]. Defendant attached the affidavit of Ms. Susan Strickler where she indicated that "[a] true and exact copy of the policy issued to Berkline/Bench Craft, LLC and under which Mr. Justice is claiming benefits was produced at pages AR 1-35" [Doc. 13-3, *Affidavit of Strickler,* at ¶ 10]. Plaintiff has not come forth with any other Plan he claims governs the determination of whether Plaintiff is entitled to benefits. He speculates that there could be another plan but that contention is simply based on Defendant's past pattern of paying Plaintiff LTD benefits for over five years.

3

That Defendant cannot produce a copy of the Plan that was executed by Berkline, the policyholder, does not make the Plan a legal nullity. If it did, then Plaintiff's cause of action would not be based on the Plan. In fact, in his complaint, Plaintiff alleged he was seeking benefits under an "employer welfare benefit plan" [Doc. 1, *Complaint,* at ¶ 9]. His employer was Berkline. Moreover, other than the copy of the Plan that is unsigned by Berkline, there is nothing in the record to suggest that the policy did not apply to Berkline. All that is before the undersigned is the sworn affidavit of Defendant's employee representing that the Plan filed with the Court is the Plan which governs Plaintiff's disability determination. The undersigned cannot speculate that the "actual" Plan is lost in light of the record before it. The undersigned RECOMMENDS finding that the Plan attached be considered the Plan governing the determination of benefits in this case.

The next issue is whether this Plan provides the administrator discretion to determine benefit eligibility or not. The resolution of this issue will determine the standard of review the Court should employ in reviewing the benefit decisions of the administrator. Defendant argues that the Plan unambiguously grants Defendant "discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits" [Doc. 13, *Defendant's Response*, at pg. 1]. In support of its claim that the Plan gives Defendant discretion, it cites to the Plan itself:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

*Id.* at 2, quoting [Doc. 16-2, pg. 14]. Plaintiff does not argue that this particular plan, (if it is the plan), does not provide discretion to the fiduciary to determine eligibility for benefits. He simply insists it is not a legally-enforceable contract because Berkline did not sign it. It is clear from

4

reading the Plan's provisions that "the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Wilkins,* 150 F.3d at 613. Accordingly, the undersigned RECOMMENDS finding the terms of the Plan itself grant discretion to the fiduciary to determine eligibility for benefits under the Plan. As such, the standard of review, based on the express terms of the Plan, would not be *de novo* but arbitrary and capricious. That, however, does not end the analysis.

Plaintiff also argues that the *de novo* standard should apply because Defendant Reliance did not make the final claim's decision [Doc. 12, pg. 5]. "[E]ven when the plan documents confer discretionary authority on the plan administrator, when the benefits decision 'is made by a body other than the one authorized by the procedures set forth in a benefits plan,' federal courts review the benefits decision *de novo.*" *Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 365 (6th Cir. 2009) quoting *Sanford v. Harvard Indus. Inc*., 262 F.3d 590, 597 (6th Cir. 2001). Thus, "where a plan administrator does not make the benefits decision, the plan administrator has not exercised its discretionary authority, and therefore a deferential standard of review is not justified. *Id.*

The initial denial letter was sent from Ms. Susan Strickler on "Matrix" letterhead. The Plan did not vest Matrix with discretionary authority to determine eligibility for benefits under the Plan. That was reserved for Reliance. According to Defendant, "Matrix … was responsible for the initial review of claims submitted under the policy issued to Berkline/Bench Craft, LLC, including whether the claim should be approved or denied" [Doc. 13-3, *Affidavit of Strickler* at ¶ 6]. Defendant claims, in an affidavit of Ms. Strickler, that the denial letter had the Matrix letterhead instead of Reliance because the "computer claim system erroneously … identified the underlying claims examiner as being from Matrix based on the examiner's code" *Id.* at ¶ 5.

5

Strickler affirms that she works for Reliance and not Matrix, and that she made the final decision on behalf of Reliance. Defendant notes that the final decision denying benefits was on Reliance's letterhead, and that decision was made by Ms. Strickler, its employee [Doc. 13, pg. 5].

"[T]o determine the appropriate standard of review applicable to the decision to deny benefits, the district court was required to resolve the factual issue of who actually made the benefit determination." *Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 365 (6th Cir. 2009)(quotations and citations omitted). The only evidence before the Court is the affidavit of Ms. Strickler, who claims she "made the decision on the appeal … on [her] own on behalf of [Defendant]. No one from Matrix was involved in the appeal decision" [Doc. 13-3, *Affidavit of Susan Strickler,* at ¶ ¶ 8 and 9]. These facts are uncontroverted. Defendant is the fiduciary and made the final decision to discontinue benefits. No other party was involved such that it would change the applicable standard of review.

Accordingly, the undersigned FINDS that the Plan attached [Doc. 16-2, pg. 1-35] is the Plan at issue, that the Plan grants Defendant, as the administrator of the Plan, discretion in determining eligibility for benefits, and further finds that, on the record before it, Defendant made the benefits decision and thus exercised discretionary authority over benefit determinations. The Court RECOMMENDS that the District Court employ the "highly deferential arbitrary and capricious standard of review." *Shelby Cty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 365 (6th Cir. 2009)(citations omitted).[1]

    Respectfully Submitted,

    s/Clifton L. Corker
    United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).