UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| ROBERT JUSTICE, | ) | |
| | ) | |
| Plaintiff, | ) | 2:15-CV-00134-JRG |
| | ) | |
| vs. | ) | |
| | ) | |
| RELIANCE STANDARD LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court pursuant to 28 U.S.C. § 636 and by Order of Reference filed

by the District Court referring the matter for a Report and Recommendation [Doc. 34].   Before

the Court are the parties' cross-motions for summary judgment.  [Doc. 30, 37].  Both parties have

filed their respective responses and replies.  The motions are now ripe for judgment.

## I.    BACKGROUND

The facts are undisputed for purposes of addressing the parties' cross-motions for summary

judgment.  This case arises from Reliance Standard Life Insurance Company's ("Reliance")

termination of Long Term Disability benefits under the terms of a Group Disability Insurance

Policy designated as policy number 114859 (hereinafter "the Policy").  The parties agree that this

Policy is part of an employee welfare benefit plan and is therefore governed by the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § § 1001 *et seq.*

Reliance issued two disability insurance policies to Berkline/Benchcraft, LLC

("Berkline").  The first policy, identified as policy number VIP530537, offered Short-Term

Disability ("STD") benefits and included coverage for hourly employees who were engaged in

1

active work.  The benefits under this plan would last for a maximum of 26 weeks.  The second

policy, identified as policy number 114859, offered Long-Term Disability ("LTD") benefits for

"Each active, Full-time salaried Employee" [AR at 7].   Hourly employees were excluded from

coverage for LTD benefits under this Group plan.  The LTD policy also provided that any

"[c]lerical errors in connection with this Policy … whether by [Reliance] or the Plan Adminstrator

… will not continue insurance that would otherwise ceased or should not have been in effect."

[AR at 13].  The policy identified Reliance as the Claims Review Fiduciary with discretion to

interpret the terms of the policy and to make eligibility determinations [AR at 14].  Berkline served

as the Plan Administrator and was identified as the plan sponsor [AR at 1-35].  Berkline had the

responsibility to notify Reliance of those employees who were eligible for coverage under the

policy and to collect the applicable premium payments [AR at 11].

On March 10, 2004, Plaintiff Robert Justice ("Justice") began working as an hourly

employee for Berkline and was offered the opportunity to enroll in coverage for disability

insurance benefits.  Under Policy number VIP530537, Justice, as an hourly employee, was eligible

to receive STD coverage and elected to enroll.   He alleges that he paid out of his earnings at least

a portion of the premiums for his coverage.  More importantly, however, he claims that Berkline

offered him LTD coverage as well, and he believed that his payments included coverage for LTD

benefits.  While the Administrative Record is indeterminate on that issue, "Reliance does not now

rely on any argument that Plaintiff failed to submit premium payments [for LTD coverage]."  [Doc.

35, *Reliance's Response,* pg. 3].  Up to this point, Reliance had no contact with Justice regarding

his eligibility to receive LTD benefits.

On May 15, 2008, Justice became disabled as a result of foot pain due to Calcaneonavicular

Tarsal Coalition and applied for STD benefits [AR at 226].  Matrix, the administrator of both the

STD and LTD plans, conducted a review of his medical condition, obtained his medical records from his treating physicians and found that he qualified for STD benefits. Justice received STD benefits through November 2008, the maximum under his STD policy [AR at 354].

On October 20, 2008, Matrix wrote Justice regarding his disability benefits. "If you feel you will be totally disabled longer than anticipated under the Short Term Disability benefits plan, you may want to apply for Long Term Disability benefits. Matrix Absence Management, Inc. on behalf of Reliance Standard Life Insurance Company is also responsible for administering your Company's Long Term Disability (LTD) policy." [AR at 367]. The letter attached an application for Justice to apply for LTD benefits.

On October 29, 2008, Justice completed the "Group Long Term Disability" claim [AR at 371]. He noted that he had been receiving STD benefits in the amount of $263.00 a week from May 17, 2008 through October 2008. In the "Employment and Education Information," Justice identified the policy number that applied to his claim as "Group # VIP0530537," which was the policy number for STD benefits [AR at 374]. He also identified his occupation title as "Regulator – pull wagons" and struck through the "Monthly Salary" nomenclature and wrote "8.45 a [sic] hour." [AR at 375]. In all respects, Justice was truthful in his application.

Matrix again requested and obtained supporting medical records, which indicated that Justice remained disabled [AR at 378]. After conducting its investigation into Justice's claim, on January 8, 2009, Matrix advised him that his "claim for Long Term Disability (LTD) benefits has been approved at this time." [AR at 300]. It calculated his "Monthly Salary" at $1,853.62 which translated into a "Monthly Benefit" of $1,112.17 [AR at 300]. The letter advised Justice that his benefits will terminate on April 13, 2034 "as long as you remain disabled and meet all other provisions of your group policy through that date." [AR at 301]. It referred Justice to the "LTD

3

certificate of group insurance" for more detailed information concerning the policy provisions [AR at 301]. Justice received monthly LTD benefits of $1,112.17 from that date on.

On December 2, 2011, Reliance began to realize that it may have mistakenly determined that Justice was an eligible person under the LTD policy. It noted the following:

> This plan was 50% EE contrib. In searching Data Mart and Policy Administration, there does not appear to have been multiple LTD Policies for this [Policy Holder] group. According to the LTD policy 114859, there is only one Class Covered and only [Full-Time] "salaried Employee" are covered, and its noteworthy that the CME definition does not have the hourly language. That Data Feed indicates that the [claimant] is not a salaried [employee] and the nature of his job does not suggest that he was a salaried [employee]….Suggest contacting the [Policy Holder] to confirm enrollment and premium payment for LTD coverage.

[AR at 287]. Apparently, an examiner contacted Berkline, but no response was ever forthcoming [AR at 292]. No other investigation occurred at that time, and Reliance continued to pay Justice LTD benefits.

On January 29, 2014, Reliance noted that "it appears the claimant was not in an eligible class, both wage information provided by claimant, salary designation noted by STD and type of occupation support claimant was an hourly, not salaried employee." [AR at 293]. Reliance noted that Berkline went out of business on December 21, 2012 under a Chapter 11 liquidation [AR at 294].

On May 22, 2014, Reliance discontinued Justice's LTD benefit payments. On June 19, 2014, Matrix sent a letter to Justice advising him that it had "determined that [he was] not eligible for coverage under the Berkline/Bench Craft, LLC's Long Term Disability Policy … and no benefits should have been paid." [AR at 250]. It noted that only salaried employees were eligible for LTD benefits, and they had no proof that he had paid any premiums for such coverage [AR at 351]. At that point and for that reason, Reliance terminated paying Justice LTD benefits.

4

Justice retained counsel and appealed the denial. His attorney submitted a letter in the appeal process claiming that Berkline had represented to Justice that he had LTD coverage and that Justice believed he had been paying for such coverage [AR at 912]. He exhausted his administrative remedies under ERISA, and his appeal was denied [AR at 904].

Justice then timely commenced this action, asserting that Reliance improperly terminated his LTD benefits in violation of the Policy's terms [Doc. 1]. The Complaint takes a "shotgun" approach to this case, alleging four counts. Count one seeks relief "pursuant to 29 U.S.C. § 1101, *et seq.*" and "covers, without limitation, all causes of action set forth in 29 U.S.C. § 1132; that to include, if applicable, a cause of action for breach of fiduciary duty or the like." [Doc. 1, pg. 5-6]. Count two seeks relief under "Federal Common Law/ERISA" and makes a claim "for all permissible damages and relief based on principles of waiver, detrimental reliance, promissory estoppel and/or equitable estoppel…." *Id.* at 6. Count three alleges a claim based on "State Law/Contract" to the extent "not preempted by ERISA," basing its claim "on the contract(s) for LTD benefits between Berkline and its employees (including Plaintiff) and/or the contract between Defendant Reliance and Berkline (of which Plaintiff was an intended third-party beneficiary, *i.e.,* Plan beneficiary)." Count four alleges a cause of action under state law for relief based on the same bases as alleged in Count two, that is, waiver, detrimental reliance, promissory estoppel and/or equitable estoppel under Tennessee common law.

Justice filed a motion to determine the applicable standard of review [Doc. 12], arguing that the review should be *de novo* while Reliance contended the review should be limited to an arbitrary and capricious standard [Doc. 13]. This Court issued a Report and Recommendation, which was ultimately adopted and approved as an order of the District Court, finding that an

arbitrary and capricious standard of review applied [Doc. 25]. The parties have now filed cross-motions for summary judgment, and the matter is now ripe for resolution.

## II.     ANALYSIS

### A.     Standard of Review

The District Court has already determined that the standard of review in this case is an arbitrary and capricious standard of review. When "the plan administrator is given the discretionary authority to determine eligibility for benefits or to construe the plan terms, '[courts shall] review the administrator's decision to deny benefits using 'the highly deferential arbitrary and capricious standard of review.'" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 875-76 (6th Cir. 2006). This standard is the least demanding form of judicial review of administrative action. *Id.* "'When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'" *Id.*

While the arbitrary and capricious standard is deferential, "'it is not, however, without some teeth.'" *McDonald v. Western–Southern Life Ins. Co.,* 347 F.3d 161, 172 (6th Cir. 2003). "[M]erely because [the] review must be deferential does not mean [it] must also be inconsequential." *Evans*, 434 F.3d at 876. Under this standard of review, the determination of an administrator regarding whether to deny benefits under ERISA will be upheld if it is rational in light of the plan's provisions. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014).

### B.     ERISA Grounds for Relief

There are two broad types of employee benefit plans covered by ERISA: an "employee welfare benefit plan" and an "employee pension plan," which are also referred to in ERISA respectively as a "welfare plan" and a "pension plan." 29 U.S.C. § 1002(1), 1002(2)(A). The

Policy before the Court is an ERISA welfare plan as it was "established or … maintained for the purpose of providing … benefits in the event of … disability." 29 U.S.C. § 1002(1). A participant in an ERISA plan may seek relief in primarily three different ways. The first is to sue "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This statutory provision, to the extent Justice relies on it, is of no benefit.[1] There is no dispute that the explicit terms of the plan exclude him from coverage for LTD benefits. Only "Full time salaried employees" are eligible for coverage under the terms of the LTD plan that was in place. As Justice was only an hourly employee, enforcing the terms of the plan is of no benefit.

The second provision under ERISA in which a participant may seek relief is to sue "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2); *see also* 29 U.S.C. § 1109 (imposing liability on fiduciaries for breach of fiduciary duty). The only mention of a fiduciary duty he alleges Reliance breached was its failure "to seek information from potential Plan participants in order to determine whether they are eligible for coverage in view of any exclusions alleged to be associated with particular policies." [Doc. 33, pg. 13].

The third basis under ERISA in which a participant can seek relief is an action "to enjoin any act or practice which violates [ERISA]" or "to obtain other appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B). This is the focus of Justice's motion for summary judgment. He argues that his motion "rests squarely on estoppel" [Doc. 33, *Plaintiff's Motion for Summary Judgment*, pg. 9].

---

[1] The Complaint indicates that Justice seeks relief based on "all causes of action set forth in 29 U.S.C. § 1132."

### C.     Breach of Fiduciary Duty

The Sixth Circuit has recognized an equitable claim by a participant against an ERISA plan fiduciary arising out of 29 U.S.C. § 1132(a)(3) when a fiduciary misleads a participant or beneficiary. *See Moore v. Lafayette Life Ins. Co.,* 458 F.3d 416, 432 (6th Cir. 2006). Pursuant to 29 U.S.C. § 1002(21)(A) of ERISA:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). ERISA also provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). As noted, Justice's claim that Reliance breached its fiduciary duty is limited to whether Reliance should have determined Justice's eligibility at the time he enrolled in the plan verses at the time he made a claim.  He cites to no authority on this issue.  However, in *Rainey v. Sun Life Assur. Co. of Canada*, No. 3:13-CV-0612, 2014 WL 4053389, at *11 (M.D. Tenn. Aug. 15, 2014), *report and recommendation adopted*, No. 3-13-0612, 2014 WL 4979335 (M.D. Tenn. Oct. 6, 2014), the District Court found that the insurer's "decision not to perform an eligibility determination except when or if a claim is filed [was] reasonable...."

In any event, the Policy specified that as the plan administrator, it was Berkline's duty to identify all eligible individuals and maintain sufficient records for each insured employee.  [AR at 11, 13].  As the plan administrator, Berkline was responsible for furnishing the insured employees copies of the summary plan description.  29 U.S.C. § 1021(a).  Reliance, as the claims review fiduciary, did not begin its review until after it was provided notice of a disability claim [AR at 14].  As Berkline sent one total premium payment to Reliance monthly, Reliance was unaware of

which employees were contributing to that payment. *See Van Loo v. Cajun Operating Co.*, 64 F. Supp. 3d 1007, 1013 (E.D. Mich. 2014) (as the employer was the plan administrator and responsible for remitting premiums accurately and ensuring coverage elections, Reliance as the claims review fiduciary would "typically ha[ve] no record of individual coverage or premium amounts").

As the Policy makes clear, Berkline was the fiduciary responsible for initial administration of the Policy for the benefit of the participants.  In *Krohn*, the Sixth Circuit imposed liability against the plan administrator-employer for failure to provide the plaintiff pertinent information concerning its LTD benefits, failing to submit her application to the insurer, and not acting in accordance with the written plan instruments. 173 F.3d at 552.  Specifically, the court held that as the employer had knowledge about the plaintiff's employment situation, it owed her a "duty to inform her-carefully, completely and accurately-of the long-term disability benefits to which she was entitled through her employer, so that she could weigh her options and make informed decisions." *Id.* at 551.  Notably, this duty to inform fell to the plan administrator as opposed to the claims review fiduciary.  As such, it was Berkline's fiduciary responsibility to fully inform Justice—carefully, completely, and accurately—of the terms of its LTD benefits policy in order for him to make an informed decision.  Any failure of Berkline to do so cannot be imposed onto Reliance.  *See generally Krohn*, 173 F.3d at 551-52 (assigning fault solely as to the plan administrator and none to the claims review fiduciary).  Reliance must be judged for its actions and decisions made as the claims review fiduciary and how it made the ultimate eligibility determination.  This claim is without merit.

## D.    Equitable Estoppel

The Sixth Circuit has found that "equitable estoppel may be a viable theory in ERISA cases," and have treated promissory estoppel in the same way. *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403–04, 403 n. 13 (6th Cir.1998) (en banc). As explained by the Sixth Circuit, the doctrine of equitable estoppel operates to "preclude[] a party from exercising contractual rights because of his own inequitable conduct toward the party asserting the estoppel." *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1299 (6th Cir. 1991).[2]

> To validly plead such a claim, a plaintiff must prove all of the following elements:
>
> (1) there must be conduct or language amounting to a representation of material fact;
> (2) the party to be estopped must be aware of the true facts;
> (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends;
> (4) the party asserting the estoppel must be unaware of the true facts; and
> (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Moore v. Lafayette Life Ins. Co.,* 458 F.3d 416, 428-29 (6th Cir. 2006); *see also Stark v. Mars, Inc.*, 518 F. App'x 477, 481 (6th Cir. 2013) (quoting *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 456 (6th Cir. 2003)).  It is a rare remedy, however, in the ERISA context.  *Paul v. Detroit Edison Co. & Mich Consol. Gas Co. Pension Plan*, 642 F. App'x 588, 594 (6th Cir. 2016).  Additionally, the failure to meet any of these five factors precludes the remedy.

Importantly, a plaintiff "cannot recover under an estoppel theory for misrepresentations which contradict unambiguous, written plan terms because their reliance on the subsequent representation would be unreasonable." *Moore,* 458 F.3d at 429 (citing *Sprague*, 133 F.3d at 403).

---

[2] The availability of this remedy was reaffirmed by the U.S. Supreme Court in *Cigna Corp. v. Amara*, 563 U.S. 421 (2011), which held that equitable remedies were available under Section 502(a)(3) of the Act, 29 U.S.C. § 1132(a)(3)(B).

The threshold question to determine if equitable estoppel is an appropriate remedy is whether the provisions of the plan are ambiguous. In this case, the policy is not ambiguous. The Policy establishes that "[a] person is eligible for insurance under this Policy if he/she: (1) is a member of an Eligible Class, as shown on the Schedule of Benefits page; and (2) has completed the Waiting Period, as shown on the Schedule of Benefits page." [AR at 16]. The Schedule of Benefits Page defines the "eligible classes" as "Each active, Full-time salaried Employee except any person employed on a temporary or seasonal basis." *Id.* at 7. Justice concedes he was an hourly employee as opposed to a salaried employee. As the Policy's provisions are unambiguous, Justice is not entitled to equitable estoppel. However, even assuming the plan provisions did contain ambiguous language, Justice would fail as he cannot demonstrate all of the five elements of equitable estoppel.

### 1. There must be conduct or language amounting to a representation of material fact.

The first element of equitable estoppel is: "there must be conduct or language amounting to a representation of material fact." *Sprague*, 133 F.3d at 403. In support of this factor, Justice argues that Reliance accepted premium payments from Berkline, invited him to apply for LTD benefits, and ultimately approved his initial application for LTD coverage. In fact, Reliance does not dispute that Berkline remitted premium payments on the LTD policy. Reliance issued the policy to Berkline, which made initial eligibility determinations under the terms of the policy and remitted premium payments to Reliance. Justice had no interaction with Reliance until he submitted his initial application for STD benefits where Matrix, on Reliance's behalf, evaluated his STD claim.

In this case, the policy is unambiguous. The LTD policy only applies to those who are "Full-Time salaried Employees…." [AR at 7]. It does not cover hourly employees such as Justice. That is indisputable. Thus, for Justice's argument to have merit, Reliance's mere acceptance of

premium payments by Berkline on a Group policy would have to have the effect of modifying the unambiguous terms of the ERISA plan.

In *CLARCOR, Inc. v. Madison Nat. Life Ins. Co., Inc.*, 491 F. App'x 547, 549 (6th Cir. 2012), Clarcor purchased an excess loss insurance policy from Madison to insure against major employee health care expenses. One of Clarcor's employees became ill and amassed a "considerable amount of health care costs." *Id.* at 550. Employees were not covered under the Plan if they were placed on short-term disability. *Id.* In this case, the employee was placed on short-term disability, but Clarcor continued to pay Madison premiums for coverage under the Plan for the employee. *Id.* at 551. This created a dispute because "[t]he plain and unambiguous terms of the Plan demonstrate that [the employee] was not eligible for Plan coverage following commencement of her short-term disability leave." *Id.* at 552. When Madison refused to pay the excess loss associated with the medical costs for the employee, Clarcor filed suit, claiming that because Madison had accepted premium payments, it could not now claim the employee was ineligible under the Plan. *Id.* The Sixth Circuit "easily rejected" this argument. *Id.* at 553. "When Madison was accepting these premium payments, it was not aware that [the employee] was no longer eligible under the Plan. Accordingly, the acceptance of premium payments does not constitute some sort of admission or waiver." *Id.* at 553.

In this particular case, this was a Group Policy in which Berkline was responsible for enrollment of its eligible employees. Reliance was quite clear that Berkline "under no circumstances" would act as its agent. [AR at 11]. It required Berkline to notify Reliance of "all individuals eligible for coverage under this Policy…." [AR at 11]. Berkline failed to do so. More importantly, Justice does not claim that Reliance knew that he was not eligible under the LTD policy when it accepted the premium payments. Furthermore, Justice points to nothing in the

12

record where Reliance made any representations of fact about his eligibility for LTD benefits prior to the time Justice became disabled in May 2008.

In *CLARCOR*, the Sixth Circuit further noted that "[t]he acceptance of premiums does not alter the unambiguous coverage requirements of the Plan and Policy." 491 F. App'x at 553; *see also Moore*, 458 F.3d at 429 ("Plaintiffs cannot recover under an estoppel theory for misrepresentations which contradict unambiguous, written plan terms because their reliance on the subsequent representation would be unreasonable"). Certainly, that is the case in this instance. The terms are quite clear and exclude Justice from coverage.

Justice also argues that the "conduct" that was a representation of fact in this case was Reliance paying him LTD benefits for five years. But payment of benefits is not sufficient. In *Adams v. General Motors, Co.*, 547 F. App'x 661 (6th Cir. 2013), General Motors paid Adams "pension benefits for twenty-one months until it concluded that those payments were made in error and cancelled them." *Id.* at 662. In order to qualify for benefits under the plan in *Adams*, Adams's name had to appear on the "seniority list" otherwise she was considered a temporary employee and not qualified to receive pension benefits under the plan. The plan was unambiguous, and "Adams … offered no evidence that her name actually appeared on the seniority list, making her ineligible for pension benefits." *Id.* at 664. That GM mistakenly paid Adams could not establish her eligibility. "The mistaken payments may not serve as the sole basis for establishing eligibility for a pension in this case." *Id.* at 665. The same is true here. The fact that Reliance mistakenly paid Justice is not a representation of eligibility that is not reviewable upon discovering the truth of his eligibility.

Moreover, the Policy specifies that any clerical errors resulting in "insurance that … otherwise … should not have been in effect" would not result in additional coverage after the

13

mistake was discovered and corrected.  [A.R. 13].  Accordingly, Justice could not rightfully rely on benefits alone as conduct representing his eligibility.

## 2. The party to be estopped must be aware of the true facts.

To meet the second element of equitable estoppel, Justice must establish that Reliance was aware of the "true facts."  *See Moore,* 458 F.3d at 428.  The Sixth Circuit has interpreted this element as "requiring the plaintiff to demonstrate 'either intended deception or such gross negligence as to amount to constructive fraud.'"  *Deschamps v. Bridgestone Ams., Inc. Salaried Employees Retirement Plan*, 840 F.3d 267, 274 (6th Cir. 2016) (quoting *Paul v. Detroit Edison Co. & Mich. Consol. Gas Co. Pension Plan*, 642 F. App'x 588, 593 (6th Cir. 2016)).  Honest mistakes do not meet this standard.  *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 431 (6th Cir. 2007) (finding that the elements of estoppel were not satisfied where the party to be estopped "made an honest mistake").

In this case, there is no suggestion that Reliance was so grossly negligent to amount to constructive fraud when Justice became disabled in May 2008 or when they approved his LTD benefits later that year.  In fact, just the opposite is true.  Reliance's negligence resulted in Justice receiving five and a half years of LTD benefits under a Policy that unambiguously excludes him from coverage.  To be sure, Reliance should have known that Justice was an hourly employee and should not have approved coverage.  After all, Justice wrote on his application that he only made $8.40 an hour.  Reliance simply missed that and approved his application, resulting in a windfall to Justice.

Reliance's failure to correct its error earlier does not obligate itself to pay LTD benefits for the duration of the policy.  In *Stark v. Mars*, 518 F. App'x 477, 481 (6th Cir. 2013), when the plaintiff received an amount of benefits higher than the amount to which she was actually entitled,

14

she called the insurance carrier. The insurer assured her that she was receiving the appropriate amount but this was based on inaccurate information from the employer. *Id.* However, when the insurer discovered the clerical error that caused her benefits to be calculated incorrectly, it decreased her benefits accordingly. *Id.* The plaintiff sued, arguing equitable estoppel prevented the insurer from reducing her benefits. *Id.* at 480. The Court found the mistake to be simply an "honest" one, which precluded recovery. *Id.* at 482.

Justice cites to an out-of-circuit case, *Hankinson v. Northwestern Mut. Life Ins. Co.*, 2012 WL 5286922 (C.D. Ill. Oct. 24, 2012), in support of his position. In *Hankinson*, the plaintiff was denied disability coverage based on the fact that under the policy, he was not a "Member." *Id.* at *2. The plaintiff was a co-owner of a chiropractic clinic until he agreed to be bought out by his partner. *Id.* at *1. Northwestern Mutual provided a group disability insurance policy to the clinic. *Id.* When the plaintiff sold his share of the practice, he began his own clinic. *Id.* In negotiations for the sale, the parties agreed that even though the plaintiff was establishing his own practice, Northwestern Insurance would continue to provide him coverage under its disability policy. In fact, two agents of Northwestern Mutual actually advised the plaintiff how to proceed in order to maintain his disability coverage. *Id.* He did exactly what they instructed. Roughly six years after the sale, the plaintiff became permanently disabled and submitted a claim under the policy, which was denied because he did not follow the proper conversion procedures. *Id.* at *2. The court, however, found that Northwestern Mutual was estopped from denying coverage as the facts established that it was aware of the plaintiff's employment circumstances and continued to insure him despite knowing he had failed to follow the proper procedures. *Id.* at *4. The court also noted specifically that two of Northwestern Mutual's agents knew of the situation and advised him of the incorrect conversation procedures. *Id.*

15

In this case, Justice does not contend that anyone from Reliance represented he had LTD coverage prior to him becoming disabled. In fact, the first reference in the Record to Justice potentially receiving LTD benefits was in the letter from Matrix on October 20, 2008, in which Matrix advised Justice that if he believes he will be totally disabled longer than anticipated under the short term disability benefit plan, he "may want to apply for Long Term Disability benefits…." [AR at 367]. Matrix attached the application to the letter and even advised him that copies of the Policy were available upon request. *Id.*

Justice notes that Reliance's Claims Department Administrative Procedures Manual establishes that before paying benefits, all eligibility issues should be checked. Indeed, the Manual does establish that. [*See* Doc. 43, pg. 2]. However, the Court notes that this Manual was filed outside of the Administrative Record. The Court is limited to the Administrative Record when considering the merits. *See Johnson v. Connecticut Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. 2009). However, even if the Court were to take into consideration this fact, it does not have a significant impact. Reliance concedes that it erred in not confirming Justice's eligibility when he applied for LTD benefits. While negligent, Reliance's failure in this regard does not rise to such gross negligence that constitutes fraud.

Reliance's conduct is also not comparable to other cases in which the Sixth Circuit has found this element satisfied. In *Paul v. Detroit Edison Co. & Mich. Consol. Gas Co. Pension Plan*, 642 F. App'x 588, 593-94 (6th Cir. 2016), the employer and the pension plan grossly miscalculated the plaintiff's pension benefits, but only "after giving repeated written and oral assurances to [the plaintiff] that his retirement benefit was properly calculated." The Court found that the miscalculation amounted to constructive fraud because "[the defendants] were the only ones in a position to know the true facts, they assumed that they knew the true facts when [the

plaintiff] specifically asked if the calculations were correct, and they repeatedly assured [the plaintiff] that they knew the true facts." *Id.* at 594. None of those facts are present here. Similarly, in *Smiljanich v. General Motors Corp.* 302 Fed. Appx 443, 446 (6th Cir. 2008), the employer misrepresented to the employee that if he returned to defendant's employment he would not lose his accrued service time. Later, the defendant changed its treatment of the plaintiff's past work, causing him to lose his prior accrued service time. *Id.* at 447. The Court held this kind of conduct amounted to gross negligence, and thus, constructive fraud. *Id.* at 449.

Justice is simply unable to point to conduct of that caliber that would warrant a gross negligence finding in this case. Reliance simply made a mistake in paying Justice five years of benefits to which he was not otherwise entitled to receive. Accordingly, the Court finds that the second factor for equitable estoppel has not been satisfied.

### 3. The party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends.

The third element of equitable estoppel requires "the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends." *Moore,* 458 F.3d at 428. In support of this element, Justice only argues that because Reliance accepted his premium payments, processed his 2008 claim and application for benefits, and remitted benefits checks, Reliance "knew what it was doing." [Doc. 49, pg. 6]. He asserts this conduct in and of itself satisfies the third element. Reliance did not make any representations directly to Justice and Justice does not claim to the contrary. *Clarcor* otherwise forecloses Justice's argument that acceptance of premium payments can change "the unambiguous coverage requirements" of the Plan. *CLARCOR*, 491 F. App'x at 553.

**4.      The party asserting the estoppel must be unaware of the true facts.**

Justice claims that he was unaware that he was ineligible for LTD coverage.  He notes that he was truthful in all of the paperwork he submitted, and as he received benefits for a number of years, he had no reason to question whether he was actually eligible for them.  Justice also argues that as he was given STD benefits for a period in 2008, it was reasonable for him to assume that he would be entitled to LTD benefits.  [Doc. 49, pg. 7].  Additionally, Justice has consistently maintained that he was never provided a copy of the Plan or Policy, nor an explanatory benefits summary.[3]

The law on this factor is clear:

> The truth concerning these material facts must be unknown to the other party claiming the benefit of the estoppel, not only at the time of the conduct which amounts to a representation or concealment, but also at the time when that conduct is acted upon by him. If, at the time when he acted, such party had knowledge of the truth, *or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means*, he cannot claim to have been misled by relying upon the representation or concealment.

*Gibbons*, 209 F.3d at 593 (emphasis added) (quoting *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 59 n. 19 (1984). Awareness or knowledge of the true facts is met when a party has the means to acquire the knowledge with reasonable diligence.  *Id.*

Here, Justice was an hourly worker with limited education.   He does not contend that he asked for a copy of the Policy or otherwise attempted to obtain a copy.   As noted in *Gibbons,* because Justice could have obtained the Policy with reasonable diligence, he cannot now claim he

---

[3] If Justice failed to receive a summary plan description, the fault is not to be placed on Reliance. For ERISA purposes, Berkline was the Plan Sponsor.  29 U.S.C. § 1021(a) provides that the administrator of the employee benefit plan shall furnish a summary plan description to each participant covered under the plan and to each beneficiary receiving benefits. Thus, Berkline had the duty to provide a summary plan description to Justice—not Reliance.

was misled about being covered under the Policy. Although Justice asserts numerous times that he is "relatively uneducated and unsophisticated," the provision regarding employment eligibility for LTD benefits is unambiguous and written in simple language.[4] Accordingly, the Court finds that the fourth factor for equitable estoppel has not been satisfied.

**5. The party asserting the estoppel must reasonably and justifiably rely on the representation to his detriment.**

In support of the final factor, Justice contends that paying premiums proves detrimental reliance. Additionally, he claims that he never sought coverage elsewhere before filing for disability because he believed himself to be covered. The Sixth Circuit has explained that in order to show detrimental reliance, the plaintiff must establish that the defendant's statements "in truth" influenced his conduct, causing prejudice. *Deschamps*, 840 F.3d at 276. "The prejudice, or detriment, suffered must be 'actual and substantial,' but may be proved by 'loss of opportunity to improve one's position.'" *Id.* (quoting *Smiljanich*, 302 F. App'x at 450). For instance, in *Deschamps*, the plaintiff suffered the loss of an employment opportunity at a rival company, which offered a higher salary, because of the false pension guarantee he was given—numerous times— by his employer. *Id.* The plaintiff testified that had the defendant not misrepresented the pension information to him, he likely would have moved to the rival company. *Id.* The court found that the reliance on the representations concerning his pension was justified because they were made by members of the defendant's management and confirmed in written materials and online to review for over a decade. *Id.*

In the instant matter, Justice's detrimental reliance argument can be broken down into two parts: the first is Reliance's acceptance of premium payments, and the second is Reliance's

---

[4] The Policy establishes that coverage extends to "Each active, Full-time salaried Employee except any person employed on a temporary or seasonal basis." [AR at 7].

approval of the disability claim and subsequently paying benefits. First, as to the issue of premium payment, the Sixth Circuit has recognized that a "party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." *Sprague*, 133 F.3d at 404. He makes no argument that the plan is ambiguous. Second, the mere fact that he was paid benefits is not dispositive. This error does not entitle him to additional benefits. *See Adams*, 547 F. App'x at 665 ("mistaken payments may not serve as the sole basis for establishing eligibility"). Justice cannot establish any detrimental reliance based on Reliance paying him LTD benefits as this occurred after he was disabled.

### D. Administrative Review Process

Finally, as Reliance notes, Justice once again raises the same questions regarding whether the attached Policy is the controlling contract and whether Reliance or Matrix made the administrative review determination. This Court, as well as the District Court, have settled these issues. Justice has provided no basis for the Court to reconsider its previous rulings, which were adopted and approved by the District Court. Accordingly, the Court finds that the Policy is the contract that governs the determination of benefits in this case. [Doc. 25, pg. 6-7].

While the Court acknowledges the inherent conflict of interest in the fact that Reliance both made the termination decision and paid the benefits, this conflict does not replace the arbitrary and capricious standard of review; rather, it is a factor to be considered in the Court's review, and the Court should determine if any evidence exists that the decision was influenced by the conflict. *See Evans*, 434 F.3d at 876. Justice has not identified any influence at all. In fact, it appears to the Court that Reliance's decision to terminate Justice's benefits was simply based on the fact that Justice was not eligible under the Policy to receive the benefits. It was not a discretionary decision involving matters of medical judgment.

20

### E.      State law claims

To the extent that Justice's complaint can be construed as asserting state-law claims through which he seeks to recover monetary damages tied to the benefits that he believes were wrongfully terminated under the Policy, Reliance correctly points out that any such state-law claims are preempted by ERISA.  *See Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 440 (6th Cir. 2010); *Ramsey v. Formica Corp.*, 398 F.3d 421, 424–25 (6th Cir. 2005).  This Court agrees.

Further, Justice alleges that he was a third-party beneficiary of the contract between Berkline and Reliance, and therefore he should continue to receive LTD benefits.  But he cannot be a third-party beneficiary of a contract that excludes him from coverage.  That claim has no merit.

## III.     CONCLUSION

Accordingly, the Court respectfully RECOMMENDS that Defendant's motion for summary judgment [Doc. 30] be GRANTED, and that Plaintiff's motion for summary judgment [Doc. 33] be DENIED respectively. [5]

Respectfully Submitted,

s/Clifton Corker
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived.  28 U.S.C. § 636(b)(1).